# Exhibit A

# Circuit Court
### OF THE
# City of Richmond
### John Marshall Courts Building

T. J. MARKOW
JUDGE

January 22, 2018

400 NORTH NINTH STREET
RICHMOND, VIRGINIA 23219-1999

Mark R. Herring
Attorney General

Cynthia E. Hudson
Chief Deputy Attorney General

Samuel T. Towell
Deputy Attorney General

Richard S. Schweiker, Jr.
Chief and Senior Assistant Attorney General

David B. Irvin, Esquire
Erin E. Witte, Esquire
James E. Scott, Esquire
Office of the Attorney General
Consumer Protection Section
Predatory Lending Unit
202 North Ninth Street
Richmond, Virginia 23219

William H. Hurd, Esquire
Siran S. Faulders, Esquire
Ashley L. Taylor, Jr., Esquire
James K. Trefil, Esquire
Troutman Sanders LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23219-1122

## LETTER OPINION

Re:  *Commonwealth v. Allied Title Lending, LLC*
     CL17-4286

Dear Counsel:

The Parties came, by counsel, before this Court on December 1, 2017 to be heard on the Motion to Crave Oyer and the Demurrer. The Court took the matter under advisement and now

makes its ruling in this letter opinion. For the reasons stated below, the Court **DENIES** the Motion to Crave Oyer, the Court **OVERRULES** the Demurrer to Count I, and the Court **SUSTAINS** the Demurrer to Count II.

### I. Factual and Procedural Background

Allied Title Lending, LLC (hereinafter "the Company") is a Delaware limited liability company engaged in consumer lending, with twenty-three physical locations in Virginia. In 2008, the Virginia State Corporation Commission issued the Company's Certificate of Registration to Transact Business in Virginia. The Company held a consumer finance lending license from October 2013 to January 2015, but never exercised its authority to provide consumer finance loans. Instead, since 2013, the Company has provided Virginia consumers with open-end lines of credit.

On September 12, 2017, the Commonwealth of Virginia (hereinafter "the Commonwealth") filed suit against the Company. The Commonwealth alleges that from July 28, 2013 through at least July 24, 2017 the Company imposed an annual interest rate of 273.75% on its open-end credit plan loans. Allegedly, in issuing the loans, the Company charged a $100 origination fee on each loan, which constitutes a "finance charge" within the meaning of Virginia Code § 6.2-312, before the running of the mandatory twenty-five day grace period. In doing so, the Commonwealth contends the Company failed to comply with the statutory requirements to qualify for an exemption of Virginia's consumer finance statutes, and is thus in violation of those statutes. Similarly, the Commonwealth alleges that the Company violated the Virginia Consumer Protection Act in their lending practices.

### II. Applicable Law

The first count of the Complaint asserts that the Company violated the Virginia consumer finance statutes, or the Virginia Consumer Finance Act. Those statutes, located in Virginia Code §§ 6.2-1500 *et seq.*, regulate the issuance of small loans in Virginia. Unless a lending entity qualifies for a statutory exemption, it must first obtain a license through the State Corporation

Commission in order to impose annual interest rates in excess of 12% on consumer loans. Va. Code § 6.2-1501(A). One of the statutory exemptions exists for lenders who provide open-end credit plans. Va. Code § 6.2-1501(B)(3). An open-end credit plan is defined as:

> [C]onsumer credit extended by a creditor under a plan in which: (i) the creditor reasonably contemplates repeated transactions; (ii) the creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) the amount of credit that may be extended to the consumer during the term of the plan, up to any limit set by the creditor, is generally made available to the extent that any outstanding balance is repaid.

Va. Code § 6.2-300. However, pursuant to Virginia Code § 6.2-312(a), open-end credit plan lenders are prohibited from imposing a finance charge before a twenty-five day grace period has elapsed. Specifically, that Section of the Virginia Code states:

> Notwithstanding any provision of this chapter other than § 6.2-327, and except as provided in subsection C, a seller or lender engaged in extending credit under an open-end credit plan may impose, on credit extended under the plan, finance charges and other charges and fees at such rates and in such amounts and manner as may be agreed upon by the creditor and the obligor, *if under the plan a finance charge is imposed upon the obligor if payment in full of the unpaid balance is not received at the place designated by the creditor prior to the next billing date, which shall be at least 25 days later than the prior billing date.*

Va. Code Ann. § 6.2-312(a) (emphasis added). The term "finance charge" is defined as having "the meaning assigned to it in Consumer Financial Protection Bureau Regulation Z, 12 C.F.R. § 1026.4, as amended." Va. Code § 6.2-100. Thus, the Code defines "finance charge" as "the cost of consumer credit as a dollar amount," which "includes any charge payable directly or indirectly by the consumer and imposed directly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a). It does not include "any charge of a type payable in a comparable cash transaction." *Id.*

The Consumer Finance Act is remedial in nature, regulating the terms and the manner in which small loans are issued to debtor borrowers. *See Valley Acceptance Corp. v. Glasby*, 230 Va. 422, 428 (1985) (citing *Sweat v. Commonwealth*, 152 Va. 1041, 1046, 1057 (1929)). The Court must examine the substance of the transaction, not merely the form, in order to determine whether a transaction violates the Act. *Id.* at 429. The Act "must be liberally construed to avoid the mischief at which it is directed and to advance the remedy for which it was promulgated." *Id.* at 428 (citing *Bowman v. Commonwealth*, 201 Va. 656, 661 (1960)).

The second count of the Complaint alleges that the Company violated the Virginia Consumer Protection Act, codified at Virginia Code §§ 59.1-196 et seq., which was adopted as a "remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197. A supplier violates the Virginia Consumer Protection Act if, in connection with a consumer transaction, it commits one of the fraudulent acts or practices listed in Virginia Code § 59.1-200. The Complaint alleges that the Company's actions constitute violations under Virginia Code §§ 59.1-200(A)(5) and 59.1-200(A)(14).

The Act lists exemptions to the chapter, found in Virginia Code § 59.1-199. Specifically, Virginia Code § 59.1-199(D) exempts:

> [B]anks, savings institutions, credit unions, *small loan companies*, public service corporations, mortgage lenders as defined in § 6.2-1600, broker-dealers as defined in § 13.1-501, gas suppliers as defined in subsection E of § 56-235.8, and insurance companies regulated and supervised by the State Corporation Commission or a comparable federal regulating body.

Va. Code § 59.1-199(D) (emphasis added).

### III. Standard of Review

Pursuant to Rule 1:4(d) of the Rules of the Supreme Court of Virginia, "[e]very pleading shall state the facts on which the party relies in numbered paragraphs and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." In order to withstand a demurrer, a complaint must contain "sufficient allegation of material facts to inform a defendant of the nature of and character of the claim," and need not "descend into statements giving details of proof." *Catercorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993). In ruling on demurrers, courts are to "consider as true all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the facts alleged." *Luckett v. Jennings*, 246 Va. 303, 307 (1993). "On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *Flippo v. F & L Land Co.*, 241 Va. 15, 16 (1991).

A motion craving oyer is used to force a party to file with the court of record documents mentioned in the pleadings, but not attached thereto. *Smith v. Wolsiefer*, 119 Va. 247 (1916). Defendants can crave oyer any documents which form the basis for the plaintiff's cause of action. *See Sjolinder v. Am. Enter. Solutions, Inc.*, 51 Va. Cir. 436, 437 (City of Charlottesville 2000). Where a motion craving oyer is granted, the court in ruling on a demurrer may properly consider the facts alleged as amplified by the additional document added to the record. *Wards Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382 (1997) (citing *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 398 (1985)). Furthermore, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Id.* (citing *Fun v. Virginia Military Inst.*, 245 Va. 249, 253 (1993)).

### IV. Motion Craving Oyer

The Company seeks oyer of its full website found at www.alliedcash.com. It contends that the Complaint is based at least in part on certain allegations about statements appearing on the Company's website. The Court disagrees. The Court finds that the Commonwealth properly

attached the documents material to their claims. The Commonwealth's claims are based on the Company's "Line of Credit Agreement and Plan," attached to the Complaint as Exhibit 1, and the "Copy of Initial Billing Statement," attached to the Complaint as Exhibit 2. Further, the Court finds that the Commonwealth merely referenced and attached portions of the Company's website to bolster their claims. Because the website does not form the basis of the Commonwealth's cause of action, the Court **DENIES** the Motion to Crave Oyer.

### V. Demurrer

Considering the allegations under Count I in the light most favorable to the Commonwealth, which the Court must do when considering a demurrer, *W.S. Carnes, Inc. v. Chesterfield Cnty.*, 252 Va. 377, 384 (1996), the Court does not find that they are insufficient as a matter of law. The Complaint sufficiently pleads facts that state the Company violated the Virginia Consumer Finance Act, either as an unlicensed consumer finance lender or as an open-end credit plan lender. The Company imposed annual interest rates on consumer loans in excess of 12% without meeting any of the exceptions laid out in Virginia Code § 6.2-303. Specifically, the Company charged more than 12% interest without having a license as required by Virginia Code § 6.2-1501, and without abiding by the requirements of open-end credit lenders pursuant to Virginia Code § 6.2-312. The statutes at issue are not ambiguous and therefore the rule of lenity does not apply. Because the factual allegations under Count I sufficiently state a cause of action, the Court **OVERRULES** the Demurrer to Count I.

However, considering the allegations under Count II in the light most favorable to the Commonwealth, the Court finds that they are insufficient as a matter of law to state a violation of the Virginia Consumer Protection Act. The Court finds that the Company falls within an exclusion to the Act under Virginia Code § 59.1-199(D) as a "small loan company." The Commonwealth urges the Court that the qualifying phrase at the end of the subsection "regulated and supervised by the State Corporation Commission or a comparable federal regulating body" applies to "small loan company." The Court disagrees. The rule of the last antecedent requires that "all qualifying words and phrases, where no contrary intention appears, apply only to the last antecedent." *Scott v. Commonwealth*, 292 Va. 380, 384, 789 S.E.2d 608, 609 (2016) (citing

*Newberry Station Homeowners Ass'n v. Bd. of Supervisors*, 285 Va. 604, 615, 740 S.E.2d 548, 554 (2013)). The last antecedent means the "last word, phrase or clause that can be made an antecedent without impairing the meaning of the sentence." *Id.* As such, that qualifying phrase only applies to "insurance companies," which directly precedes it.

Furthermore, the Commonwealth contends that "small loan company" only refers to *licensed* small loan companies. However, where a statute's language is unambiguous, courts are bound by the plain meaning of the language. *City of Danville v. Garrett*, 294 Va. 36, 40 (2017) (quoting *Bd. of Supervisors of James City v. Windmill Meadows, LLC*, 287 Va. 170, 174-75 (2014)). Courts must "give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." *Id.* There is no Virginia law defining "small loan company," and the statute at issue is unambiguous. As such, the Court applies the plain meaning of the language. The Court finds that "small loan company" means companies, such as the one in the present case, which issue small loans. Because the Company is exempt from the Virginia Consumer Protection Act, the Court **SUSTAINS** the Demurrer to Count II.

The Court has entered an Order reflecting its decision on this date. I remain,

> Very truly yours,
>
> Theodore J. Markow, Judge