IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE:      SHIRLEY DEAN TAYLOR | Case No. 17-30142-KRH |
|  | Chapter 13 |
| Debtor. | |
| _____ | |
| SHIRLEY DEAN TAYLOR, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 18-03003-KRH |
| ALLIED TITLE LENDING, LLC d/b/a ALLIED CASH ADVANCE, and | |
| CERASTES, LLC, | |
| Defendants. | |
| _____ | |

## MEMORANDUM OPINION

Before the Court in this adversary proceeding (the "Adversary Proceeding") is a Motion to Compel[1] pursuant to the Federal Arbitration Act (the "FAA")[2] filed by Allied Title Lending, LLC d/b/a Allied Cash Advance ("Allied") in response to the Amended Complaint[3] filed by the plaintiff, Shirley Dean Taylor (the "Debtor"). The issue presented by the Motion to Compel is whether the Court should stay this Adversary Proceeding and compel arbitration of the Amended

---

[1] Mot. Entry Orders (I) Staying Adv. Pro. & Compelling Arb. & (II) Determining Class Action Claims this Pro. Are Non-Core Pursuant 28 U.S.C. § 157(b)(3), ECF No. 39 ("Motion to Compel").

[2] 9 U.S.C. §§ 1-307 (2018).

[3] Am. Compl. Objecting Claim No. 8-1 & No. 8-2, Damages, Costs, & Att'y Fees Pursuant FDCPA 15 U.S.C. § 1692, Classwide Rel., Declaratory Rel., Injunctive Rel., & Equit. Rel. Pursuant 11 U.S.C. § 105, ECF No. 23 ("Amended Complaint").

Complaint. A hearing on the Motion to Compel took place on November 15, 2018 (the "Hearing"). The Court ruled at the Hearing that it would deny the Motion to Compel. This memorandum sets forth the reasons for the Court's ruling.

## Jurisdiction and Venue

The United States Bankruptcy Court for the Eastern District of Virginia (the "Court") has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding[4] under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O), as the Adversary Proceeding concerns "the administration of the estate," the "allowance or disallowance of claims against the estate," "counterclaims by the estate against persons filing claims against the estate," and "other proceedings affecting the liquidation of the assets of the estate."

Count II of the Amended Complaint wholly implicates the allowance and disallowance of claims against the estate as it objects to Allied's claim on the grounds that it arises out of a null and void contract, which would disallow the claim under section 502(b)(1) of Title 11 of the United States Code (the "Bankruptcy Code"). *See* 11 U.S.C. § 502(b)(1) (Claims against the estate are allowed except to the extent they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."). Count III involves not only the allowance or disallowance of claims against the estate but also counterclaims under Virginia's usury laws against persons filing claims against the estate. Thus, Counts II and III are core proceedings

---

[4] A distinction is drawn here between statutorily core and constitutionally core proceedings as it affects the jurisdictional analysis for bankruptcy courts for reasons stated *infra*.

under 28 U.S.C. § 157(b)(2) such that the Court retains jurisdiction to hear and decide these claims.[5]

Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. A substantial part of the events or omissions giving rise to the claims asserted in the Amended Complaint against Allied took place in this judicial district.

### Background and Procedural History

*Background*

The Debtor is a salaried employee of the U.S. Probation Office. Am. Compl. ¶ 21. Allied, a Delaware limited liability company, offers "short-term, small-dollar loans to Virginians that mimic payday loans but are in the form of open-end credit plans." *Id.* ¶¶ 10, 15. Cerastes, LLC ("Cerastes") is a co-defendant in this action and a Delaware limited liability company that "buy[s] defaulted consumer accounts from debt sellers where the debtor has filed for Chapter 13 bankruptcy protection" and then "prosecute[s] Proofs of Claims on those accounts." *Id.* ¶¶ 17-18.

In July 2016, the Debtor submitted an application to Allied requesting a loan in the amount of $1500. Mot. to Compel ¶ 6. On July 25, 2016, the Debtor executed a line of credit agreement with Allied (the "Credit Agreement"). Am. Compl. ¶ 22. Under the terms of the Credit Agreement, Allied agreed to loan the Debtor $1500 in cash, and the Debtor agreed to

---

[5] Allied challenges this position in its Motion to Compel, arguing that "the Class Action Claims are non-core proceedings otherwise related to a case under title 11" and "do not qualify under any of the sixteen core proceedings listed in 28 U.S.C. § 157(b)(2)." Mot. to Compel ¶¶ 5, 31.

While the Debtor objects to Allied's claim and requests relief on behalf of her herself in Counts II and III of the Amended Complaint, she also requests class certification on the grounds that other debtors in the Eastern District of Virginia have been similarly affected by Allied's common course of conducting business by allegedly charging interest in excess of the legal limit. The Court has not yet addressed the issue of class certification on either Count II or Count III.

repay the $1500 along with interest accruing at a rate of 0.75% per day, which equates to an annualized interest rate of 273.75%. *Id.* ¶¶ 22-23. The Credit Agreement provided that interest would not begin accruing on the Debtor's account until twenty-eight days after she opened her account (the "Grace Period"). *Id.* ¶ 30 Ex. 1, at 3. Allied also assessed a $100 origination fee (the "Origination Fee") on the Debtor's account. *Id.* ¶ 24. Unlike the $1500 the Debtor initially borrowed, the Origination Fee "was not subject to the Grace Period." *Id.* ¶ 30. The Credit Agreement contained the following arbitration provision (the "Arbitration Provision"):

> Before signing this Agreement, you should carefully review the Arbitration Agreement located on pages 5 and 6. The Arbitration Agreement provides that all Claims arising from or relating to this Agreement or any other agreement that you and we have ever entered into must be resolved by binding arbitration if the person or entity against whom a Claim is asserted elects to arbitrate the Claim. Thus, if the person or entity against whom you assert a Claim elects to arbitrate the Claim, then you will not have the following important rights:
> ☐ You may not file or maintain a lawsuit in any court except a small claims court.
> ☐ You may not join or participate in a class action, act as a class representative or a private attorney general, or consolidate your Claim with the claims of others.
> ☐ You will have to pay the arbitration firm certain fees in order to commence an arbitration proceeding, unless you ask us to pay those fees to the arbitration firm for you.
> ☐ You give up your right to have a jury decide your Claim.
> ☐ You will not be afforded the procedural, pre-trial discovery and appellate rights in an arbitration proceeding that you would enjoy in a court or judicial proceeding.
> If you do not want to arbitrate all Claims as provided in the Arbitration Agreement, then you have the right to reject the Arbitration Agreement. To reject arbitration, you must deliver written notice to us at the following address within 30 days following the date of this Agreement: Allied Cash Advance, Attn: Arbitration Opt-Out, P.O. Box 36381, Cincinnati, Ohio 45236. Nobody else can reject arbitration for you; this method is the only way you can reject the Arbitration Agreement. Your rejection of the Arbitration Agreement will not affect your right to credit, how much credit you receive, or any contract term other than the Arbitration Agreement.

4

Mot. to Compel Ex. B, at 2.

*Bankruptcy Proceeding*

On January 11, 2017, (the "Petition Date") the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code in this Court (the "Bankruptcy Case"). On March 21, 2017, Allied filed proof of claim 8-1 in the Bankruptcy Case in the amount of $2756.92 for "Money loaned" ("Claim 8-1"). The Debtor filed her initial objection to Claim 8-1 on August 29, 2017, alleging that Allied had "neither attached a copy of the writing upon which the claim is based nor a statement of the circumstances of the loss or destruction of such writing" in contravention of Rule 3001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Obj. Claim No. 8-1 & Mem. Supp. Thereof ¶ 13, *In re Taylor*, No. 17-30142-KRH (Bankr. E.D. Va.), ECF No. 29. On September 1, 2017, the Court entered an order confirming the Debtor's chapter 13 plan. Order Confirming Plan, *In re Taylor*, No. 17-30142-KRH (Bankr. E.D. Va.), ECF No. 31.

On September 28, 2017, Cerastes filed a transfer of claim, indicating that Allied had transferred Claim 8-1 to Cerastes. Transfer Claim Other Than Security, *In re Taylor*, No. 17-30142-KRH (Bankr. E.D. Va.), ECF No. 38.[6] The same day, Cerastes filed an amended proof of claim 8-2 to include the writing upon which the claim was based ("Claim 8-2").[7] Cerastes also filed a response to the Debtor's claim objection, explaining that the "Amended Claim in effect moots the Debtor's Objection." Resp. Obj. Claim No. 8-1 ¶ 11, *In re Taylor*, No. 17-30142-KRH (Bankr. E.D. Va. Sept. 28, 2017), ECF No. 40.

---

[6] *See* Fed. R. Bankr. P. 3001(e)(2).

[7] The Debtor alleges that her transaction history on the account shows that in the five-and-one-half month period between the time her loan was funded and the Petition Date, she repaid Allied a total of $795.62. Am. Compl. ¶ 69.

5

*Adversary Proceeding*

On January 15, 2018, the Debtor initiated this Adversary Proceeding by filing a complaint against Allied and Cerastes. Compl. Objecting Claim No. 8-1 & No. 8-2, Damages, Costs, & Att'y Fees Pursuant FDCPA 15 U.S.C. § 1692, Classwide Rel., Declaratory Rel., Injunctive Rel., & Equit. Rel. Pursuant 11 U.S.C. § 105, ECF No. 1 ("Original Complaint").[8] On January 25, 2018, Allied filed a transfer of claim, this time indicating that Claim 8-2 had been transferred from Cerastes back to Allied. Transfer Claim Other Than Security, *In re Taylor*, No. 17-30142-KRH (Bankr. E.D. Va.), ECF No. 57. In response to the Original Complaint, Allied and Cerastes both filed motions to dismiss or, in the alternative, to stay the proceeding. Mot. and Mem. Law Supp. Mot. Cerastes, (1) To Dismiss Compl. or (2) In Altern. Stay Adv. Proc. Pending Res. State Ct. Lawsuit, ECF No. 11; Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(1) & 12(b)(6); In Altern., Mot. Abstain Adjud. Compl. or Mot. Stay & Mem. P. & A., ECF No. 12. On March 1, 2018, Allied also filed a motion to withdraw its proof of claim with respect to Claims 8-1 and 8-2, Mot. Leave Withdraw Proof of Claim No. 8 & Mem. P. & A., ECF No. 14, which was denied by order entered May 29, 2018, Order Den. Allied's Mot. Leave Withdraw Claim No. 8, ECF No. 63.

On March 15, 2018, the Debtor filed the Amended Complaint. The Amended Complaint contained five counts. Count I objects to Claims 8-1 and 8-2 on the grounds that fees and interest were assessed after the Petition Date, the claims were not properly identified as open-end credit, and Claim 8-2 falsely asserted that no interest or fees had been added. Count II seeks to disallow the claims pursuant to section 502(b)(1) of the Bankruptcy Code because they are

---

[8] The Bankruptcy Rules require an objection to the allowance of a claim to be brought as part of an adversary proceeding when it includes a demand for the recovery of property, Fed R. Bankr. P. 7001(1), equitable relief, *id.* 7001(7), or declaratory relief, *id.* 7001(9). *See id.* 3007(b).

unenforceable under Virginia Law governing consumer finance and because they neither provide the writing underlying the claims nor provide all information required for a claim based on open-end credit as required by Bankruptcy Rule 3001. Count II also seeks to assert a class claim objection against Allied on behalf of other similarly situated debtors in the Eastern District of Virginia.[9] Count III asserts claims against Allied for violation of Virginia law governing consumer finance, Va. Code §§ 6.2-1500 to 6.2-1543, and Virginia usury law.  It also seeks declaratory relief, injunctive relief, and relief for the recovery of claims on behalf of other similarly situated debtors in the Eastern District of Virginia.  Count IV is a class claim under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 to 1692p, against Cerastes.[10]  Count V is a request for equitable relief under section 105 of the Bankruptcy Code and Bankruptcy Rule 3001.  Am. Compl. ¶¶ 74-149.[11]

On March 29, 2018, the Court received, among other filings, (i) Allied's Motion to Dismiss the Amended Complaint, Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(1) & 12(b)(6); & Mem. P. & A., ECF No. 35 ("Allied's Motion to Dismiss"),[12] and (ii) Allied's Motion to Compel.  The Motion to Compel asserted that the Court need not address it until it had resolved Allied's Motion to Dismiss.  Mot. to Compel ¶ 4.  In the event the Court did not grant Allied's

---

[9] The claim objection class members are defined as "[a]ll debtors in the Bankruptcy Court for the Eastern District of Virginia who, before filing bankruptcy, entered into a credit agreement with Allied based upon a purportedly open-end credit basis, and a claim was filed regarding the agreement."  Am. Compl. ¶ 79.  The Court has not addressed the merits of the proposed class certification.

[10] Count IV of the Amended Complaint was dismissed without prejudice by consent order.  Agreed Order Dismissing Without Prejudice Class Claim Against Cerastes, LLC Violations FDCPA (15 U.S.C. § 1692e), ECF No. 50.

[11] At the Hearing, the Court ruled that it would dismiss Count V as to Cerastes.

[12] Allied's Motion to Dismiss asks the Court to determine whether the Debtor's credit agreement with Allied violated Virginia's consumer finance law and usury law. Specifically the Court must decide whether the credit agreement qualifies as an open-end credit facility.  If the Court determines that the credit agreement is actually a closed-end facility, then the agreement between the Debtor and Allied would be void and unenforceable because Allied would not meet the exception provided by Virginia to its usury law.

Motion to Dismiss, the Motion to Compel asked for entry of an order staying the Adversary Proceeding, "compelling arbitration pursuant to the agreement to arbitrate," and "determin[ing] that the Class Action Claims are non-core proceedings." *Id.* ¶¶ 13-14. Specifically, the Motion to Compel sought arbitration of the "Class Action Claims . . . in Counts II and III." *Id.* ¶ 12.

On April 12, 2018, the Debtor filed several responses, including a response to the Motion to Compel. Pls.' Mem. Opp'n Def. Allied's Mot. Compel Arb., ECF No. 47. Allied filed replies to the Debtor's responses on April 19, 2018. *See* Allied's Reply Supp. Mot. Entry Order Staying Adv. Pro. & Compelling Arb., ECF No. 53. The Court set a hearing on, among other motions, Allied's Motion to Dismiss and the Motion to Compel for July 24, 2018. Prior to the hearing on July 24, 2018, Allied submitted a new motion asking the Court to certify the questions of state law, pertinent to Counts II and III of the Amended Complaint, to the Supreme Court of Virginia. *See* Mot. Certif. Questions State Law; & Mem. P. & A., ECF No. 71 ("Motion for Certification").[13] At the hearing on July 24, 2018, the Court granted the Motion for Certification and stayed this Adversary Proceeding. The Court thereupon certified Allied's questions to the Supreme Court of Virginia by order entered August 20, 2018. *See* Order of Certif. to Supreme Court of Virginia, ECF No. 78.

On August 31, 2018, the Supreme Court of Virginia respectfully declined to accept the certified questions of state law that the Court had submitted to it. *See* Letter, ECF No. 81. On September 18, 2018, the Supreme Court of Virginia denied Allied's motion for reconsideration

---

[13] Allied brought the Motion for Certification under section 105 of the Bankruptcy Code and Rule 5:40 of the Rules of the Supreme Court of Virginia. The Motion for Certification asserted that the interpretation of Allied's credit agreement with the Debtor and the legal meaning of section 6.2-312 of the Virginia Code were questions of Virginia law for which there was no controlling state court precedent. The Motion for Certification also represented that the resolution of these state law questions was determinative of the relief sought by the Debtor in Counts II and III of the Amended Complaint.

8

of the certification of questions of state law. *See* Letter, ECF No. 88.[14] The Court then scheduled a pre-trial conference on October 10, 2018 (the "Pre-trial Conference"). At the Pre-trial Conference, the parties represented that the matters pertaining to the motions previously scheduled for July 24, 2018, were fully briefed and ripe for determination. The Court scheduled the November 15, 2018, Hearing to consider the Motion to Compel, Allied's Motion to Dismiss, and a motion to dismiss filed by Cerastes, Mot. & Mem. Law Supp. Mot. Cerastes, LLC, Dismiss Am. Compl., ECF No. 30 ("Cerastes's Motion to Dismiss"). The Court also announced at the Pre-trial Conference that it would hear any motions filed by the Office of the Attorney General of Virginia (the " Virginia Attorney General") at the Hearing.

On November 8, 2018, the Virginia Attorney General filed a motion to intervene and file pleadings in intervention in this Adversary Proceeding. Commonwealth's Mot. Leave File Pleadings Interven., ECF No. 108 ("Motion to Intervene"). The Virginia Attorney General alleged that it met the criteria for intervening in this Adversary Proceeding under Federal Rule of Civil Procedure 24(b) as incorporated by Bankruptcy Rule 7024. Mot. to Intervene 1. The Virginia Attorney General attached as an exhibit its proposed complaint in intervention, which seeks disallowance of Allied's claim against the Debtor for violation of Virginia consumer finance laws and Virginia usury law and seeks relief from Allied in the form of "restitution, civil penalties, attorney's fees and costs, as well as injunctive relief" arising out of Allied's "loans that the Commonwealth alleges are void." *Id.* Ex. A, at 2. Specifically, the Virginia Attorney General asserts that Allied extended loans to debtors that violated Virginia's consumer finance statutes and filed proofs of claim in bankruptcy proceedings based on those illegal lending arrangements. *Id.* On November 13, 2018, Allied filed an objection to the Virginia Attorney

---

[14] On September 6, 2018, Allied filed a "motion for reconsideration of denial of certified question" with the Supreme Court of Virginia. *See* Letter, ECF No. 88.

General's Motion to Intervene. Allied's Prelim. Obj. & Reserv. Rights Regarding Commonwealth's Mot. Leave File Pleadings Interven., ECF No. 109.

At the Hearing, after entertaining arguments from all parties, the Court granted the Motion to Intervene, permitting the Virginia Attorney General to intervene in this Adversary Proceeding. The Court also denied the Motion to Compel. The Court took Allied's Motion to Dismiss under advisement and granted Cerastes's Motion to Dismiss with respect to Count V of the Amended Complaint.

## Analysis

In its Motion to Compel, Allied asks the Court to stay this Adversary Proceeding and refer Counts II and III of the Debtor's Amended Complaint to arbitration "pursuant to the agreement to arbitrate set forth in the [Credit] Agreement." Mot. to Compel ¶ 13. The Motion to Compel also asks the Court to determine that Counts II and III are "non-core proceedings that are otherwise related to a case under title 11." *Id*. ¶ 14. At the Hearing, the Court denied the Motion to Compel because Counts II and III are constitutionally core claims. As such, referring the claims to arbitration would conflict with the essential purpose of the bankruptcy process to quickly and efficiently resolve claims against the Debtor's estate and also would undermine the Virginia Attorney General's statutory prerogative to intervene in this Adversary Proceeding.

The Federal Arbitration Act provides that written contracts to arbitrate "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or equity for the revocation of any contract." [15] 9 U.S.C. § 2. The FAA establishes "a liberal federal policy favoring arbitration

---

[15] While it was not argued by any party at the Hearing, the Court questioned whether legal grounds exist for revocation of the arbitration contract if the Credit Agreement was in fact void as the Virginia Attorney General maintains. Query whether there exists consideration to support the contract if the agreement containing the Arbitration Provision is void.

agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]rbitration policies implemented under the [FAA] are to be robustly followed." *Moses v. CashCall, Inc.*, 781 F.3d 63, 71 (4th Cir. 2015) (per curiam) (internal citation omitted). This stems from the "fundamental principle that arbitration is a matter of contract," and contracts should be enforced according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 334 (2011) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010)).

Arbitration agreements, though "on an equal footing with other contracts," are not inviolate. *Id*. at 339. A party seeking to prevent enforcement of an arbitration agreement must show that "Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000). A court may deduce such congressional intent from "(1) the statute's text; (2) its legislative history; or (3) 'an inherent conflict between arbitration and the statute's underlying purposes.'" *CashCall*, 781 F.3d at 71 (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). Upon discovery of congressional intent to preserve judicial remedies for the statutory rights at issue, the court has the discretion to withhold arbitration, a decision subject to an abuse of discretion standard of review at the appellate level. *Id.* at 71-72.

In *Moses v. CashCall*, the United States Court of Appeals for the Fourth Circuit applied this framework in the bankruptcy context. The Fourth Circuit recognized that sending a constitutionally core claim to arbitration pursuant to an arbitration agreement would "inherently conflict with the purposes of the Bankruptcy Code." *Id.* at 72. *See also Anderson v. CreditOne Bank, N.A.* (*In re Anderson*), 884 F. 3d 382, 387 (2d Cir. 2018) ("If the matter involves a core proceeding, the bankruptcy court is tasked with engaging in a 'particularized inquiry into the

11

nature of the claim and the facts of the specific bankruptcy.'" (quoting *MBNA Am. Bank, N.A. v. Hill,* 436 F. 3d 104,108 (2d Cir. 2006))).

28 U.S.C. §§ 157(b)(1) categorizes bankruptcy proceedings as either core or non-core proceedings. A bankruptcy court can hear and determine core bankruptcy proceedings arising under Title 11 or arising in a case under Title 11. These include the "allowance or disallowance of claims against the estate" and "counterclaims by the estate against persons filing claims against the estate." *CashCall*, 781 F.3d at 70 (quoting 28 U.S.C. § 157(b)(2)(B)-(C)). "A bankruptcy court may also hear related non-core claims, but it cannot finally resolve them and must instead submit proposed findings of fact and conclusions of law to the district court." *Id.* (citing 28 U.S.C. § 157(c)(1)).

The Fourth Circuit recognized the distinction the Supreme Court had drawn in *Stern v. Marshall*, 564 U.S. 462 (2011), between constitutionally core and constitutionally non-core bankruptcy proceedings. *Id.* at 69-70. In *Stern v. Marshall*, the Supreme Court segmented counterclaims into two new categories: constitutionally core claims on the one hand and statutorily core but constitutionally non-core claims on the other. 564 U.S. at 499. Article III of the United States Constitution prohibits bankruptcy courts from issuing final orders concerning counterclaims that are not constitutionally core. *Id.* The counterclaim must "stem[ ] from the bankruptcy itself or would necessarily be resolved in the claims allowance process" in order to be considered constitutionally core. *Id.* In the wake of *Stern*, a statutorily core but constitutionally non-core counterclaim—a so-called "Stern Claim"—must be treated "as if it

12

were statutorily non-core." *CashCall*, 781 F.3d at 70; *see also Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014).[16]

In *CashCall*, on facts strikingly similar to those presented in the case at bar, a loan servicer filed a motion asking the bankruptcy court to compel arbitration for two of a debtor's claims: a claim to declare the loan between the loan servicer and debtor illegal and void under North Carolina law and a claim to obtain damages for the loan servicer's debt collection practices. *Id.* at 68. The Fourth Circuit held that the first claim was constitutionally core because "the validity of the Loan Agreement 'would necessarily be resolved' in adjudicating CashCall's proof of claim and Moses' objections thereto." *Id.* at 70 (quoting *Stern*, 584 U.S. at 499). Constitutionally core claims strike at the heart of the bankruptcy process Congress has established through the Bankruptcy Code, which is designed to "provide debtors and creditors with 'the prompt and effectual administration and settlement of the . . . estate'" and "centralize disputes over the debtor's assets and obligations in one forum." *Id.* at 72 (quoting *Katchen v. Landy*, 382 U.S. 323, 328 (1966)). Therefore, the bankruptcy court's refusal to refer the debtor's objection to the allowance of CashCall's claim to arbitration was proper because arbitration "would 'substantially interfere' with [the debtor's] efforts to reorganize" and would "inherently conflict" with the purposes of the Bankruptcy Code and with Congress's intent in enacting the Bankruptcy Code. *Id.* at 73 (quoting *Phillips v. Congelton, L.L.C.* (*In re White Mountain Mining Co.*), 403 F.3d 164, 169-70 (4th Cir. 2005)).

---

[16] The distinction between a constitutionally core claim and a "Stern claim" is whether the counterclaim arises out of the same nucleus of fact. *See Stern*, 564 U.S. at 497-498. For example, assume a proof of claim is filed based on amounts allegedly owed by the debtor to a claimant under the terms of a contract. A counterclaim by the debtor for breach of the contract would be a constitutionally core claim as a valid claim for first breach would have a direct effect on the validity of the creditor's proof of claim. A counterclaim by the debtor for allegedly defamatory statements made by the claimant about the debtor's performance under the contract, while potentially a compulsory counterclaim, would be a statutorily core but constitutionally non-core "Stern claim" as that claim arises from a different set of facts.

The Fourth Circuit held that the second claim in *CashCall*, a counterclaim seeking damages under the North Carolina Debt Collection Act, was constitutionally non-core, and it reversed the district court's decision to uphold the bankruptcy court's denial of arbitration. *Id.* at 66. While it was recognized that the success or failure of the counterclaim would have ancillary effects on the bankruptcy case, they were found to be "too attenuated . . . to constitute an 'inherent conflict' with the Bankruptcy Code's purpose of facilitating an efficient reorganization." *Id.* at 82 (Gregory, J., concurring). The damages were found to be "unrelated to the Defendant's proof of claim" and were "only related to the bankruptcy case in that if successful, the bankruptcy estate will recover any non-exempt funds and disburse them to claims in accordance with the bankruptcy code." *Id.* at 82 (internal quotations omitted).

Of importance to the Fourth Circuit was that the counterclaim was not related to the debtor's proof of claim. The counterclaim involved "an allegation that CashCall sought to collect on an invalid debt." *Id.* at 85. The constitutionally non-core litigation surrounding the counterclaim was "entirely peripheral to the core claim" dealing with the allowance of the proof of claim. *Id.* at 86. The counterclaim would not necessarily be resolved in the claims allowance process but would "require detailed and time-consuming findings regarding CashCall's conduct in trying to collect on the loan, other violations of the state statute, and damages like emotional distress." *Id*. at 85. Although tangentially related to the constitutionally core function of the bankruptcy court to administer the claims allowance process, the counterclaim primarily implicated the collection process, not "whether an individual was owed money by a debtor." *Id.* The Fourth Circuit concluded there was "no reason to believe that arbitration in these circumstances would substantially interfere with Moses's bankruptcy and present an inherent conflict with the purposes of the Bankruptcy Code." *Id.* at 86.

14

Based on this analysis of the Fourth Circuit's opinion in *CashCall*, the Court finds that Counts II and III of the Amended Complaint present constitutionally core claims and that referring those core claims to arbitration would inherently conflict with the purposes of the Bankruptcy Code in contravention of Fourth Circuit precedent. The Debtor asks the Court in Count II of her Amended Complaint to disallow Allied's claim because it is unenforceable under Virginia law. Am. Compl. ¶ 101. The Debtor alleges that Allied charged her 273.75% interest plus an origination fee of $100.00. *Id*. ¶ 92. The Debtor maintains that because Allied did not obtain a consumer finance license and does not otherwise qualify under the exception provided by section 6.2-312(A) of the Virginia Code, Allied's loan to her is null and void. *Id.* ¶¶ 89-91, 93-99. The Debtor also requests in Count II that the Court certify a class of similarly situated claimants under Federal Rule of Civil Procedure 23(a) as incorporated by Bankruptcy Rule 7023. *Id.* ¶¶ 79-88; *see also* Fed. R. Bankr. P. 7023.[17] Upon certification, the Debtor asks the Court to "disallow" Allied's claims against those class members as well. Am. Compl. ¶ 104. In support of the requested relief, the Debtor alleges that the loans Allied made to the other similarly situated debtors violated section 6.2-1541(A) of the Virginia Code and were therefore void and unenforceable, such that any proofs of claim related thereto should be disallowed under section 502(b)(1) of the Bankruptcy Code. *Id.* ¶¶ 100-01.

The relief requested in Count II is substantially similar to that requested in the first claim in *CashCall*, which "sought a declaratory judgment that CashCall's loan was illegal and unenforceable, in violation of N.C. Gen. Stat. § 24–1.1(c) and § 53–166(a)." 781 F.3d at 69 (per

---

[17] *See supra* note 9. While class actions are unusual in the bankruptcy context, they may be permissible under certain circumstances. *See Gentry v. Siegel*, 668 F.3d 83, 90 (4th Cir. 2012) ("In the absence of some prohibiting rule or principle, the Bankruptcy Rules should be construed . . . to allow Civil Rule 23 to be applied if doing so would result in a more practical and efficient process for the adjudication of claims."). The Court has not addressed the issue of class certification in this Adversary Proceeding, but notes that a favorable ruling on the declaratory and injunctive relief sought in the Amended Complaint may obviate any need for class certification.

curiam); *see* Am. Compl. ¶ 99 ("Under Va. Code § 6.2-1541(A), the loan was void and is uncollectible against the Plaintiff or her estate in any amount."). Like the first claim in *CashCall*, Count II is constitutionally core because this issue involves the claim allowance process and the Debtor's objection to Allied's proof of claim. Count II concerns the validity of the very Credit Agreement that undergirds Allied's claim in the Bankruptcy Case. "[R]esolution of [the Debtor's] claim that the Loan Agreement . . . was illegal could directly impact claims against her estate and her plan for financial reorganization . . . ." *CashCall*, 781 F.3d at 72. Accordingly, it would conflict with Congress's intent in enacting the Bankruptcy Code to refer this claim, which directly pertains to the Debtor's plan of reorganization and the claims allowance process of the bankruptcy court, to arbitration under the terms of Arbitration Provision.

In Count III, the Debtor asks the Court to determine that Allied's credit was usurious such that it is not entitled to any interest pursuant to section 6.2-304 of the Virginia Code. Am. Compl. ¶¶ 105-16. Like Count II, it also seeks to certify a class of claimants similarly situated to the Debtor under Federal Rule of Civil Procedure 23(a). *Id.* Upon certification, the Debtor asks the Court for "injunctive relief or declaratory relief with respect to the Usury Class as a whole." *Id.* ¶ 115.

Count III attacks the loans Allied made to the Debtor and to other similarly situated debtors as null and void under section 6.2-1541 of the Virginia Code, which would invalidate the contract Allied is using as the basis for its claims. Count III also asks the Court to find that "Allied knowingly filed Proofs of Claim on null and void loans, attempting to collect debts that cannot be enforced against debtors in bankruptcy pursuant to 11 U.S.C. § 502(b)(1)." *Id.* ¶ 115. Count III is readily distinguishable from the *CashCall* counterclaim. The *CashCall* counterclaim

16

involved a completely separate cause of action arising out of the creditor's purported violation of applicable state consumer finance statute for improper collection efforts—over and above just filing the proof of claim. A determination on the first core count "that the underlying Loan Agreement was illegal" was not outcome determinative of whether CashCall's collection efforts "inherently violate[d] the North Carolina Debt Collection Act." *CashCall*, 781 F.3d at 70-71. Rather, the *CashCall* counterclaim "regarding CashCall's conduct in trying to collect on the loan, other violations of the state statute, and damages like emotional distress . . . [was] unrelated to the Defendant's proof of claim and [was] only related to the bankruptcy case in that if successful, the bankruptcy estate will recover any non-exempt funds and disburse them to claims in accordance with the bankruptcy code." *Id.* at 85-86 (Gregory, J., concurring) (internal citations omitted).

Unlike the counterclaim in *CashCall*, which the Fourth Circuit deemed to be constitutionally non-core, Count III concerns "whether an individual is owed money by a debtor – a classic core claim." *Id.* at 85. Specifically, by Count III, the Court is to decide whether Allied has an allowable claim against the Debtor and similarly situated debtors, such that Allied is owed money by the Debtor. To the extent Allied does not have an allowable claim because the underlying loan agreement is void, Count III then asks for a declaratory judgment that Allied filed proofs of claim for unenforceable debts.

Count III would necessarily be resolved by the Court in the claims allowance process when considering Allied's proofs of claim.[18] On the one hand, if the Court concludes that the

---

[18] As stated by Allied in its Motion for Certification:

> [T]he legal meaning of Virginia Code § 6.2-312 is determinative of the issues presented in Counts II and III of the Amended Complaint. . . . [T]he fulcrum of Taylor's class claims is a dispute over the legal meaning of Virginia Code § 6.2-

17

Credit Agreement is valid, then Allied's proof of claim would be allowed. On the other hand, if the Court concludes that the loan agreement Allied is using is void, then Allied was not entitled to collect the usurious interest that it charged and the proof of claim should be disallowed. The Court must make this determination in its consideration of the validity of Allied's proof of claim pursuant to its constitutionally mandated duties. Thus, it would conflict with Congress's vision of the bankruptcy process to refer Count III to arbitration under the terms of the Arbitration Provision.

The Court also denied the Motion to Compel for a second reason. A court should not compel arbitration in scenarios where it would hinder the ability of an agency to pursue the relief it is statutorily charged with seeking. In light of the Court's decision to grant the Virginia Attorney General's Motion to Intervene in this Adversary Proceeding, referring Counts II and III to arbitration would violate the Supreme Court's explicit command in *EEOC v. Waffle House, Inc*. 534 U.S. 279, 295-96 (2002).[19] At the Hearing on November 15, 2018, this Court granted the Virginia Attorney General's Motion to Intervene as a plaintiff to object to Allied's proof of claim against the Debtor and to object to the proofs of claim filed by Allied against other similarly situated debtors on a class-wide basis. *See* Mot. to Intervene 2-3. Thus, to the extent Allied now asks the Court to refer Counts II and III to arbitration, it asks the Court to enforce the

---

312. She contends that the Origination Fee is a "finance charge under the statute, and that, as such, Allied did not qualify for the open-end credit exemption because, according to Taylor, finance charges can only be assessed on unpaid balances following a 25-day grace period. If Taylor is correct, then Allied does not qualify for the exemption; if Taylor is incorrect on either of these questions of law, then her claims must be dismissed.

Mot. for Certification ¶¶ 23-24.

[19] The Supreme Court explained that the FAA directs courts "to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" *Id.* at 293 (quoting *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

Arbitration Provision against the plaintiff-intervenor, the Virginia Attorney General. "It goes without saying that a contract cannot bind a nonparty." *Waffle House*, 534 U.S. at 294. "[T]he proarbitration goals of the FAA do not require [an] agency to relinquish its statutory authority if it has not agreed to do so." *Id.* Compelling arbitration with respect to Counts II and III would require the Virginia Attorney General to either participate in or monitor ongoing actions in multiple fora, including an arbitration, which would undermine the Virginia Attorney General's statutory function and infringe upon the Virginia Attorney General's right to pursue the remedies afforded to it by law. Accordingly, the Court denies the Motion to Compel as to the Amended Complaint.

## Conclusion

For the foregoing reasons, the Motion to Compel is denied. A separate order shall issue.


ENTERED:   November 20, 2018


    /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE


Entered on Docket:   November 20, 2018